# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE JANE FRASER,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:12-cv-01900-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD |

    Plaintiff Grace Jane Fraser ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 9, 10.)

    Plaintiff applied for Social Security benefits due to impairments stemming from a prior stroke. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is granted in part and denied in part and the Court remands this action back to the Commissioner for further administrative proceedings to determine Plaintiff's residual functional capacity and to determine whether Plaintiff is capable of performing any work.

/ / /

/ / /

## I.

## FACTUAL AND PROEDURAL BACKGROUND[1]

Plaintiff filed her application for benefits under the Social Security Act on September 25, 2009. (AR 121, 125.) Plaintiff alleged a disability onset date of February 9, 2009. (AR 121.) Plaintiff's application was denied initially on January 29, 2010 (AR 51) and then denied upon reconsideration on April 22, 2010 (AR 62). On June 7, 2010, Plaintiff filed a request for a hearing. (AR 68.)

On July 19, 2011, a hearing took place before Administrative Law Judge James Berry ("the ALJ"). (AR 23.) Plaintiff was represented by an attorney at the hearing. (AR 23.) Judith Najarian testified at the hearing as an impartial vocational expert ("the VE"). (AR 23.) On August 2, 2011, the ALJ issued his written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 11-18.) The Appeals Council denied Plaintiff's request for review on September 20, 2012. (AR 1.)

### A. Hearing Testimony

Plaintiff was born on October 24, 1953, making her 57 years old at the time the ALJ issued his written decision. (AR 27.) Plaintiff went to high school until the ninth grade and has not received a GED or high school diploma. (AR 27.) Plaintiff completed training as a certified nurse's assistant in 1971, but the certification expired in 2005. (AR 27.)

Plaintiff last worked in June 2009. (AR 27.) Plaintiff had a stroke in February 2009 and tried to go back to work afterwards, but could not work. (AR 27-28.) Prior to her stroke, Plaintiff would bathe clients, walk them, prepare meals, feed them, dress them, give them their medication and follow doctor's orders. (AR 28.)

After the stroke, Plaintiff could not raise her right arm above her shoulder. (AR 28.) Plaintiff could not stand more than ten minutes at a time and could not walk for more than ten minutes. (AR 29.) Plaintiff cannot hold things in her right hand. (AR 29.) Plaintiff has weakness in her right leg. (AR 29.) Plaintiff has a lot of pain in her back. (AR 29.) Plaintiff

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 12.)

1  stated that she can lift five to ten pounds with her right arm and ten to fifteen pounds with her left
2  arm.  (AR 29.)

3        Plaintiff has trouble dressing because she cannot lift her arms.  (AR 30.)  Plaintiff has
4  trouble with buttons and tying shoes because of coordination and grasping issues.  (AR 30.)
5  Plaintiff has difficulty showering.  (AR 30-31.)  Plaintiff has problems with incontinence.  (AR
6  31.)

7        Plaintiff lives in a motel with her husband.  (AR 32.)  Plaintiff's husband does the
8  majority of the housework.  (AR 32.)  Plaintiff does not participate in much social activities, only
9  seldomly visiting family.  (AR 32.)  Plaintiff lies down four to six hours a day and sits up for a
10 couple hours.  (AR 33.)

11       Plaintiff can stand thirty minutes to an hour in an eight hour day.  (AR 33.)  Plaintiff can
12 walk "[m]aybe a mile" but would have to sit down every few feet.  (AR 34.)  Plaintiff can walk
13 "[m]aybe a block" at a time.  (AR 34.)

14       Plaintiff did not receive rehab after her stroke because she did not have insurance.  (AR
15 35.)

16       **B.**      **Vocational Expert Testimony**

17       The VE testified that Plaintiff's prior work could be classified as "nurse's aide" and
18 "home attendant," which were both characterized as medium, semi-skilled work.  (AR 36.)  The
19 VE also indicated that Plaintiff's work history suggested she was performing heavy work.  (AR
20 36.)

21       The VE was given the following first hypothetical limitations:
22 - 57 years of age;
23 - Ninth grade education and CNA training;
24 - Past relevant work as described by the Plaintiff;
25 - Ability to lift and carry 100 pounds occasionally and 50 pounds frequently;
26 - Ability to stand, walk and sit for six hours each;
27 - Ability to occasionally climb ramps and stairs and occasionally balance; and
28 - Cannot climb ropes, ladders or scaffolds.

3

(AR 36-37.) The VE testified that such a person could perform Plaintiff's past work. (AR 37.)

The VE was given the following second hypothetical:

- Same vocational parameters listed in the first hypothetical;
- Ability to stand thirty to sixty minutes total;
- Ability to walk one block;
- Ability to sit one hour total;
- Ability to lift and carry five to ten pounds occasionally;
- Cannot raise the dominant right upper extremity above waist level;
- Difficulty gripping and grasping with the dominant right hand; and
- Needs rest breaks throughout the day totaling four to six hours.

(AR 37.) The VE testified that such a person could not perform any work. (AR 37-38.)

The VE was given the following third hypothetical:

- Same vocational parameters listed in the first and second hypotheticals;
- Ability to lift and carry ten pounds, maximum;
- Ability to stand, walk and sit three hours;
- Needs a cane to assist with walking;
- Cannot reach overhead;
- Ability to occasionally handle, finger, push, pull, operate foot controls, climb ramps and climb stairs;
- Cannot climb ladders or scaffolds;
- Cannot balance; and
- Must avoid exposure to unprotected heights.

(AR 38.) The VE testified that such a person could not perform any work. (AR 38.)

Plaintiff's attorney presented the following fourth hypothetical to the VE:

- Same vocational parameters listed in the first, second and third hypotheticals;
- Ability to lift and carry ten pounds occasionally;
- Ability to sit thirty minutes at one time, stand ten minutes at one time and walk fifteen minutes at one time;

- Ability to sit, stand and walk three hours in an eight hour day;
- Needs a cane to assist with walking;
- Cannot reach overhead with her right hand;
- Ability to frequently reach, occasionally handle, finger, feel, push and pull with her right hand;
- Ability to operate foot controls occasionally with her left foot;
- Ability to occasionally climb stairs and ramps;
- Cannot climb ladders or scaffolds;
- Cannot balance;
- Ability to occasionally stoop, kneel, crouch and crawl;
- Cannot work at unprotected heights;
- Ability to occasionally work around moving mechanical parts or operate a motor vehicle;
- Ability to occasionally work in humidity, wetness, dust, odors, fumes, and pulmonary irritants;
- Ability to frequently work in extreme cold;
- Ability to occasionally work in extreme heat; and
- Can only work in moderate noise.

(AR 38-39.)  The VE testified that such a person could not perform any work.  (AR 39.)

### C. Plaintiff's Medical Records

Plaintiff's medical records include records from St. Agnes Medical Center (AR 213-280), records from Dr. Gurinder Narain, M.D. (AR 281-315), records from the Family Health Care Network (AR 316-329), a consultative examination report from Valley Health Resources (AR 330-333), a consultative examination report from Dr. Steven C. Swanson, Ph.D (AR 334-341), a RFC Assessment from Dr. L. Kiger, M.D. (AR 342-346), a Psychiatric Review Technique from Dr. R. Tashjian, M.D. (AR 347-357) and a Medical Evaluation/Case Analysis from Dr. L. Kiger, M.D. (AR 358-360).  The relevant portions of Plaintiff's medical records are discussed in more detail below with the Court's analysis.

///

**D.    The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirement of the Social Security Act through December 31, 2013;
- Plaintiff has not engaged in substantial gainful activity since February 9, 2009;
- Plaintiff has the following severe impairments: status post cerebral vascular accident and mild right spastic hemiparesis;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to lift and carry 100 pounds occasionally and 50 pounds frequently.  She is able to stand, walk, and sit six hours each in an eight-hour work day.  She is able to balance and to climb ramps and stairs occasionally, but never climb ladders;
- Plaintiff is capable of performing past relevant work as a certified nursing assistant and nurse aide; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from February 9, 2009, through the date of the ALJ's decision.

(AR 13-17.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

1  (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a
2  reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v.
3  Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a
4  whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
5  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
6  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
7  Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
8  ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
9  conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

Plaintiff raises two issues with the ALJ's decision. Plaintiff contends that the ALJ's findings regarding Plaintiff's residual functional capacity are not supported by substantial evidence, particularly the finding the Plaintiff could lift up to 100 pounds occasionally and up to 50 pounds frequently. Second, Plaintiff contends that the ALJ improperly rejected Plaintiff's testimony regarding her own limitations.

### A. The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ's determination of Plaintiff's residual functional capacity was in error because substantial evidence does not support the finding that Plaintiff could lift up to 100 pounds occasionally and up to 50 pounds frequently. Plaintiff raises two separate issues regarding the ALJ's determination of Plaintiff's RFC: 1) whether the ALJ erred in determining that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently based upon the opinions expressed in Dr. Kiger's Physical Residual Functional Capacity Assessment, and 2) whether the ALJ erred in rejecting the other physicians' opinions regarding Plaintiff's RFC.

1. <u>The ALJ's Finding With Respect To Plaintiff's Lifting And Carrying Limitations Was Not Supported By Substantial Evidence</u>

The ALJ adopted the agency medical consultants' opinions that Plaintiff is "able to work with no exertional limitations." (AR 14.) The agency medical consultants did not express

1 Plaintiff's lifting and carrying limitations in terms of weight/pound limits and the ALJ did not
2 expressly discuss how the agency medical consultants' opinion translated to weight/pound limits.

3 The following summarizes the evidence pertaining to Plaintiff's lifting and carrying
4 limitations. On February 9, 2009, treating physician Dr. Gurinder Narain, M.D. saw Plaintiff
5 and noted "right-sided heaviness" and that Plaintiff was "very weak on the right side." (AR
6 216.) Plaintiff was diagnosed as having suffered a stroke. (See, e.g., AR 241, 255.)

7 On December 20, 2009, Plaintiff was seen by evaluating physician Michael Froehler,
8 M.D. who noted that "[m]uscle strength is otherwise full 5/5 power in all muscle groups tested"
9 and that "[f]rom a functional standpoint, there are no physical impairments but exertional
10 limitations include climbing and balancing." (AR 332-333.)

11 On January 13, 2010, L. Kiger, M.D. authored a Physical Residual Functional Capacity
12 Assessment for Plaintiff. (AR 342-346.) The form included checkbox questions relating to
13 Plaintiff's "Exertional Limitations." (AR 343.) In this section, Dr. Kiger checked the box
14 indicating "None established. (Proceed to section B)," and therefore did not provide any further
15 responses within this section, which includes checkbox questions pertaining to how much
16 Plaintiff can occasionally lift and carry and how much Plaintiff can frequently lift and carry. In a
17 Case Analysis, Dr. Kiger added that "[f]or physical, unlimited RFC with limitations suggested by
18 CE vendor," which appears to refer to Dr. Froehler's limitations regarding climbing and
19 balancing. (AR 359.)

20 On April 13, 2010, Dr. G. Spellman, M.D. authored a Case Analysis. (AR 361-363.)
21 Reviewing the prior medical reports concerning Plaintiff's physical residual functional capacity,
22 Dr. Spellman noted that "[t]here is no error on the face of the evidence. There could be some
23 lifting limitations with the pronator drift, slow movement, mild spasticity, and loss in grip
24 strength, but definitely not enough to reduce to sedentary." (AR 362.)

25 Plaintiff submitted a "Medical Source Statement" signed by physician assistant Mae
26 Caragay and Anne Marie Gonzalez, M.D. and dated May 3, 2011. (AR 383-388.) The
27 Caragay/Gonzalez assessment states that Plaintiff can lift and carry up to 10 pounds
28 occasionally. (AR 383.)

At the hearing, the VE also indicated that Plaintiff performed some jobs classified as "heavy" and did "considerable lifting over 50 pounds." (AR 36.) The transcript is not clear in that it does not identify what exhibit that the vocational expert was looking at that indicated that Plaintiff was performing heavy work. However, the VE appeared to be referring to a Work History Report filled out by Plaintiff in October 2009. (AR 168-174.) Plaintiff reported that between 2000 and 2004 she worked as a caregiver and indicated that the heaviest weight lifted in this job was 100 pounds or more and it frequently involved lifting 25 pounds. (AR 170) A second job as a nurse's assistant between 1993 and 1998 similarly involved lifting 100 pounds at most and 50 pounds or more frequently. (AR 173.)

The ALJ's conclusion that Plaintiff has no exertional limitations is based upon Dr. Froehler's findings and Dr. Kiger's findings. However, the fact that a claimant does not suffer from medical impairments that affect her exertional limitations does not necessarily mean that the claimant can lift and carry 100 pounds. Perfectly healthy people without any medial impairments may nonetheless be unable to lift and carry 100 pounds, particularly if they are of advanced age.

In this case, the Social Security Administration's categorization of weight limitations creates ambiguities and confusion regarding the relationship between medically recognizable exertional limitations and the amount a person can lift and carry. These ambiguities are reflected in the form Physical Residual Functional Capacity Assessment authored by Dr. Kiger in this case. Under the "Exertional Limitations" section of the form, the first question asked is whether the claimant suffers from any exertional limitations. If the physician indicates that the claimant *does* suffer from an exertional limitation, the form goes on to ask for details regarding how much weight the claimant can lift on an occasional basis, with options ranging from less to 10 pounds, 10 pounds, 20 pounds, 50 pounds or 100 pounds or more, and on a frequent basis, with similar options ranging from less than 10 pounds to over 50 pounds.

However, if a physician indicates that a claimant *does not* suffer from any exertional limitations, as Dr. Kiger did in this case, the form instructs the physician to skip over the questions detailing how much the claimant can lift and carry. However, as mentioned earlier, the

mere fact that a person does not suffer from any medically recognized exertional limitations does not provide insight on how much such a person can lift and carry. Thus, a physician who checks the box indicating that the claimant does not suffer from any exertional limitations does not provide any insight on how much weight the claimant is capable of lifting and carrying.

In this case, the ALJ assumed that a claimant who does not suffer any exertional limitations can be presumed to be capable of lifting and carrying 100 pounds occasionally and 50 pounds frequently—the least restrictive category recognized by the Social Security Administration. However, this presumption is flawed because a person without any medically recognizable impairments may be unable to lift and carry such weights. The flaw in the ALJ's presumption is also demonstrated by the report authored by the third agency medical consultant, Dr. Spellman. Dr. Spellman concurred with Dr. Kiger and Dr. Froehler's assessment, but went on to write that "[t]here could be some lifting limitations ... but definitely not enough to reduce to sedentary." (AR 362.) In the Social Security context, the "sedentary" work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. If the most Dr. Spellman can say is that Plaintiff is "definitely" not limited to sedentary work, it is unlikely that Plaintiff is capable of lifting and carrying 100 pounds.

None of the agency medical consultants provided an opinion regarding how much Plaintiff can lift and carry. There is nothing in the medical record that states that Plaintiff can lift and carry 100 pounds occasionally and 50 pounds frequently. Accordingly, the ALJ's findings regarding Plaintiff's lifting and carrying limitations are not supported by substantial evidence.

Plaintiff's work history reports describing the jobs she performed between 1993 and 2004 involving heavy lifting were not cited by the ALJ in his findings and therefore the Court cannot affirm the ALJ's decision on this ground. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Additionally, this work history is quite old and occurred before Plaintiff suffered from her stroke. Therefore, even if the ALJ properly cited this ground in support of his finding, this evidence is of questionable value with respect to Plaintiff's current lifting and carrying limitations.

/ / /

1    Based upon the foregoing, the Court finds that the ALJ's findings with respect to
2 Plaintiff's lifting and carrying limitations are not supported by substantial evidence.

3       2.      <u>The ALJ Did Not Err In Rejecting Ms. Caragay and Dr. Gonzalez's Opinions</u>

4    Having determined that the ALJ erred in determining Plaintiff's lifting and carrying
5 limitations, the Court addresses whether the ALJ should have adopted one of the other
6 physicians' opinions regarding Plaintiff's lifting and carrying limitations. In this case, Mae
7 Caragay and Anne Marie Gonzalez, M.D. opined that Plaintiff is limited to occasionally lifting
8 and carrying ten pounds.

9    "By rule, the Social Security Administration favors the opinion of a treating physician
10 over non-treating physicians." <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating
11 physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic
12 techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will
13 be given] controlling weight.'" <u>Id.</u> (quoting 20 C.F.R. § 404.1527(d)(2)). "If a treating
14 physician's opinion is not given 'controlling weight' because it is not 'well-supported' or
15 because it is inconsistent with other substantial evidence in the record, the Administration
16 considers specified factors in determining the weight it will be given." <u>Id.</u> These factors include
17 the length of the treatment relationship and the frequency of examination and the nature and
18 extent of the treatment relationship. <u>Id.</u> Additional factors applicable when evaluating any
19 medical opinion, not just those of treating physicians, include the amount of relevant evidence
20 supporting the opinion, the quality of the explanation provided, the consistency of the medical
21 opinion with the record as a whole, the specialty of the physician providing the opinion, and
22 "other factors" such as the degree of understanding a physician has of disability programs and
23 their evidentiary requirements and the degree of familiarity with other information in the case
24 record. <u>Id.</u>

25    "Generally, the opinions of examining physicians are afforded more weight than those of
26 non-examining physicians, and the opinions of examining non-treating physicians are afforded
27 less weight than those of treating physicians." <u>Id.</u> (citing 20 C.F.R. § 404.1527(d)(1)-(2)). When
28 a treating physician's opinion is not contradicted by another doctor, it may only be rejected for

1 clear and convincing reasons supported by substantial evidence in the record.  Id. (quoting
2 Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  Even if a treating physician's opinion is
3 contradicted by another doctor, the ALJ may not reject this opinion without providing specific
4 and legitimate reasons supported by substantial evidence in the record.  Id. (quoting Reddick,
5 157 F.3d at 725).  "The ALJ must do more than offer his conclusions.  He must set forth his own
6 interpretations and explain why they, rather than the doctors', are correct."  Id. (internal
7 quotations and citations omitted).

8       The ALJ gave little weight to Ms. Caragay and Dr. Gonzalez because the opinion relied
9 upon older CT/MRI from the day Plaintiff suffered her stroke when the medical record
10 demonstrates that Plaintiff's condition had improved since then.  The ALJ also noted that the
11 Caragay/Gonzalez opinion relied on physical exam findings that were generally normal and did
12 not support the restrictive limitations expressed by Ms. Caragay and Dr. Gonzalez.  Finally, the
13 ALJ noted that the Caragay/Gonzalez opinion indicated that Plaintiff required a cane for
14 ambulation, which was not supported by the medical record.

15       The medical record shows that Plaintiff saw Ms. Caragay for treatment between June 17,
16 2009 and March 2011.  (AR 316-328.)  The Caragay/Gonzalez opinion was dated May 3, 2011.

17       Notably, none of the visit notes document any findings that are consistent with the
18 restrictive limitations expressed in the Caragay/Gonzalez opinion.  Plaintiff established care with
19 Ms. Caragay at the Family Healthcare Network on June 17, 2009.  (AR 327.)  At the time,
20 Plaintiff "state[d] that she has no complaints at this time."  (AR 327.)  On August 6, 2009,
21 Plaintiff came in for a follow up on lab results and "state[d] that she is doing well on the
22 medication and no complaints at this time."  (AR 325.)  On August 20, 2009, Plaintiff again
23 came in for a follow-up on lab results and Plaintiff "state[d] she is doing well" with "[n]o
24 complaints at this time."  (AR 323.)  The September 9, 2009 indicate that Plaintiff requested x-
25 rays after a positive tuberculosis test, but "has no other complaints at this time."  (AR 320.)  On
26 October 7, 2009, Plaintiff complained of feeling tired and feeling depressed, but "[n]o other
27 complaints."  (AR 318.)  The December 17, 2009 treatment notes state that Plaintiff complained
28 of congestion, but "[n]o other complaints."  (AR 316.)

On June 16, 2010, Plaintiff saw Ms. Caragay "b/c disability form was rejected, PA signed it without co-signature from MD." (AR 379.) Plaintiff reported increased stress. (AR 379.) On July 16, 2010, Plaintiff sought treatment for "BUMPS IN BACK." (AR 377.) The treatment notes indicate that it may be from a spider bite. (AR 377.) Plaintiff complained of "PAIN AROUND FLANK AND RADIATION TO ABDOMEN X 2 DAYS." (AR 377.) On August 5, 2010, Plaintiff came in for a follow-up. Plaintiff did not report any pain ("Pain Scale: 0"). (AR 373.) On November 24, 2010, Plaintiff came in for a follow-up. (AR 371.) Plaintiff complained of fatigue and ongoing pain in her right shoulder. (AR 371.) Plaintiff reported that she was unable to lift her arm or comb her hair. (AR 371.)

The most recent March 2, 2011 report indicates that Plaintiff came in for a follow up on her labs. (AR 365.) Plaintiff reported more mobility with intermittent right side weakness and that she fatigues and tires easily. (AR 365.) Ms. Caragay reported good range of motion in Plaintiff's right shoulder and 4/5 grip strength. (AR 365.) Ms. Caragay only recommended dieting and that Plaintiff cease smoking. (AR 366.) Plaintiff did not report any pain ("Pain Scale: 0"). (AR 366.)

The Caragay/Gonzalez opinion indicated that Plaintiff was severely limited. However, the treatment notes from Plaintiff's most recent visit with Ms. Caragay indicated that Plaintiff had good range of motion in her right shoulder and did not report any pain. While Plaintiff complained of intermittent right side weakness, tiredness and fatigue, she also reported improved mobility. Overall, the most recent treatment report is inconsistent with the severe limitations in the Caragay/Gonzalez opinion. According to the Caragay/Gonzalez opinion, Plaintiff could only lift ten pounds occasionally, could only sit for thirty minutes at a time, stand for ten minutes at a time and walk for fifteen minutes at a time. (AR 383-384.) The Caragay/Gonzalez opinion further suggested that Plaintiff required the use of a cane to ambulate. (AR 384.)

It is also worth noting that Ms. Caragay and Dr. Gonzalez's opinion that it was medically necessary for Plaintiff to ambulate using a cane was rebutted at the hearing, as the ALJ noted that Plaintiff came to the hearing without an assistive device. (AR 17.) The Caragay/Gonzalez opinion stated that Plaintiff's use of a cane was medically necessary and that Plaintiff could

ambulate for fifteen minutes at a time without a cane. (AR 384.) Plaintiff's brief states that Plaintiff "never testified that she required a cane," (Pl.'s Opening Brief 16:12) raising further questions as to the basis of Ms. Caragay and Dr. Gonzalez's opinion that one was "medically necessary."

Substantial evidence supports the ALJ's finding that the Caragay/Gonzalez opinion was entitled to little weight. Ms. Caragay and Dr. Gonzalez appear to have heavily relied upon test results from February 2009, when Plaintiff suffered her stroke, and inexplicably disregarded more recent medical records indicating that Plaintiff's condition improved substantially since February 2009, including the most recent treatment report described above.

Based upon the foregoing, the Court finds that the ALJ did not err in rejecting the opinions of Ms. Caragay and Dr. Gonzalez.

**B.     The ALJ Did Not Err in Rejecting Plaintiff's Subjective Testimony**

Plaintiff contends that the ALJ erred in discrediting Plaintiff's subjective testimony. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ discounted Plaintiff's testimony because she never reported the same symptoms to her doctors. A claimant's "unexplained or inadequately explained failure to seek treatment" may support an ALJ's adverse credibility finding. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). As detailed above, the treatment notes show that Plaintiff complained of fatigue and right sided weakness. See discussion, supra, Part III.A.2. However, none of the treatment notes indicate that Plaintiff sought medical treatment relating to the other substantial limitations

1 identified during the hearing.  None of the treatment notes contain any reference to Plaintiff's
2 inability to stand or walk for more than ten minutes at a time, or for more than an hour in an
3 eight hour period.  There is no reference to back pain in the treatment notes.  Moreover,
4 Plaintiff's most recent treatment notes indicate that, while she continued to have intermittent ride
5 side weakness and fatigue, she also had better mobility, good range of motion in her right
6 shoulder and no pain.  The only treatment recommended by Ms. Caragay was dieting and
7 ceasing smoking.  There is no record of Plaintiff seeking any further treatment after that March
8 2011 visit.

9 Substantial evidence supports the ALJ's finding that Plaintiff's testimony was not
10 credible.  Plaintiff's testimony regarding the severity of her symptoms was not consistent with
11 the treatment she sought or the symptoms she reported to her doctor.  Accordingly, the Court
12 finds that the ALJ did not err in assessing Plaintiff's testimony.

### C.     Remand For Further Administrative Proceedings

The Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be remanded to this Commissioner for further administrative proceedings.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Id.

In this case, the ALJ's finding with respect to Plaintiff's residual functional capacity was not supported by substantial evidence.  Specifically, the ALJ's finding that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently was not supported by substantial evidence.  However, the ALJ did not err in rejecting the Caragay/Gonzalez opinion regarding Plaintiff's lifting and carrying limitations.  Accordingly, remand for further proceedings is appropriate to enhance the record for the purposes of determining Plaintiff's lifting and carrying limitations.  Further, enhancement of the record will likely be necessary to determine whether Plaintiff is capable of performing any work in light of the new findings pertaining to her residual

functional capacity.  Therefore, the Court will remand for further administrative proceedings.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ erred in his determination of Plaintiff's residual functional capacity.  The ALJ's determination of Plaintiff's lifting and carrying limitations was not supported by substantial evidence.

The Court rejects Plaintiff's argument that this matter should be remanded with instructions to the Commissioner to immediately award benefits.  The Court finds that remand for further administrative proceedings is necessary to further develop the record and address outstanding issues that must be resolved before a determination of disability can be made.  Specifically, remand is necessary to further develop the record to determine Plaintiff's residual functional capacity and to determine whether Plaintiff is capable of performing any other work in light of her residual functional capacity.

Accordingly, it is HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED in part and DENIED in part.  The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Grace Jane Fraser and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **November 18, 2013**

UNITED STATES MAGISTRATE JUDGE